United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IAN HUNTER,

    Plaintiff,

v.

OHIO INDEMNITY COMPANY,

    Defendant.

No. C 06-03524 JSW

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion to for summary judgment filed by defendant Ohio Indemnity Company ("Ohio Indemnity"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, and having had the benefit of oral argument, the Court hereby grants in part and denies in part Ohio Indemnity's motion for summary judgment.[1]

## BACKGROUND

Plaintiff Ian Hunter, Ph.D, is the Chair of the Trustees of the Unemployment Insurance Trust ("Trust"). (Complaint, ¶ 1.) The Trust entered into insurance contracts with Ohio Indemnity on behalf of non-profit agencies ("Employers") to limit their exposure for unemployment insurance liability. (Declaration of Holly Smith Jones ("Smith Jones Decl."), ¶ 4.) This action centers around two insurance policies covering the years 2002 and 2003. The

---

[1] The Court GRANTS the Trust leave to file "Second Objections to Defendant's Evidence." The Court overrules the Trust's objections to the excerpts from the deposition of Betsy Brewer attached to the Revised Declaration of Robert G. Seeds ("Seeds Decl."). The Court need not rule on the remainder of the parties' evidentiary objections because the Court did not need to consider such evidence in order to resolve the parties' cross-motions for summary judgment.

Trust submitted a claim for $328,212 under the 2002 policy and a claim for $3,723,151 under the 2003 policy. (Declaration of Stephen J. Toth ("Toth Decl."), Ex. 153; Declaration of Philip Daniel Russo ("Russo Decl."), Ex. 41.) Ohio Indemnity denied the entire claim under the 2002 policy and paid only $643,867 under the 2003 policy. (Toth Decl., ¶ 42, Ex. 43.)[2]

Ohio Indemnity contends that it does not owe the Trust any money under either policy and thus moves for summary judgment. In support of its motion, Ohio Indemnity makes the following arguments: (1) covered benefits under the policies at issue are limited to claims that were both billed by the state unemployment compensation agency and paid by the Trust during the policy year, thus reducing the claim under the 2002 policy by $405,939 and the claim under the 2003 policy by $938,685;[3] (2) for non-member agencies to which the Trust paid claims, their taxable payroll during the policy year should have been calculated into the retained obligation, thus reducing the 2003 claim by $527,838; (3) the Trust failed to challenge invalid claims, thus reducing the claim under the 2002 policy by $337,112 and the claim under the 2003 policy by $871,337.32; and (4) Ohio Indemnity is entitled to a set off of $249.315 in earned premium during 2004 and of $564,922 that it paid for state mandated bonds on the Trust's behalf. Ohio Indemnity further moves for summary judgment on the Trust's claims for breach of the implied covenant of good faith and fair dealing and request for punitive damages.

## ANALYSIS

**A.    Legal Standards on Summary Judgment Motion.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Based on additional reports run in September 2007, the Trust now contends that it is owed an additional $140,113 under the 2002 policy, bringing the total claim to $468,325, and an additional $221,904 under the 2003 policy, in addition to a lowered retained obligation, bringing the total claim to $3,971,428. (Declaration of Frances McCutchon ("McCutchon Decl."), ¶¶ 11-13; Smith Jones Decl., Ex. 57; Joint Response to Request to Narrow Issues).

[3] The Trust contends that the amount under the 2003 policy that was billed in 2002 was only $805,754. (Joint Response to Request to Narrow Issues; McCutchon Decl., ¶ 10, Ex. 47.) Based on this disputed fact, the Court will only resolve the issue of whether Ohio Indemnity is entitled to deduct amounts billed during a different year, and will not determine the exact amount Ohio Indemnity may or may not deduct.

2

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.*  Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.    Ohio Indemnity's Motion for Summary Judgment.**

    **1.    Choice of Law.**

The parties dispute whether Ohio or California law governs.  The policies at issue include a choice of law provision providing that Ohio law applies.  This Court applies California choice of law principles to determine whether a choice of law provision is enforceable. *See ABF Capital Corp. v. Osley*, 414 F.3d 1061 (9th Cir. 2005).  California law

1  generally favors enforcement of bargained for choice-of-law provisions. *Nedlloyd Lines B.V. v.*
2  *Superior Court*, 3 Cal. 4th 459, 465 (1992). When a court is faced with whether it should
3  enforce a choice-of-law provision it must first determine "(1) whether the chosen state has a
4  substantial relationship to the parties or their chosen transaction, or (2) whether there is any
5  other reasonable basis for the parties' choice of law." *Id.* at 466. If the answer to either of
6  those questions is in the affirmative, "the court must next determine whether the chosen state's
7  law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original). If there is a
8  conflict between the designated forum law and California law, a court must determine whether
9  California has "a materially greater interest than the chosen state in the determination of the
10 particular issue." *Id.* (quoting Rest. 2d Conf. of Laws, § 187, subd. (2)).[4] If the answer to this
11 question is in the affirmative, the choice of law provision will not be enforced. *Id.*

12 Ohio, as Ohio Indemnity's principal place of business and place of incorporation, has a
13 substantial relationship to the parties and provides a reasonable basis for the choice of Ohio law.
14 *See Nedloyd,* 3 Cal. 4th at 467 (noting that substantial relationship will be met if one of the
15 parties is domiciled in or resides in the chosen state). The Trust does not dispute that Ohio has
16 a substantial relationship to the parties or their transaction. Instead, the Trust argues that
17 California law governs because Ohio Indemnity has not made any showing that Ohio law is
18 materially different from California law. However, the Court must enforce the choice of law
19 provision unless Ohio law is contrary to a fundamental policy of California. Because both
20 parties appear to agree that Ohio law is not contrary to a fundamental policy of California, the
21 Court finds that the choice of law provision is enforceable. Accordingly, Ohio law governs.

22 **2.    Billed and Paid Within the Policy Year.**

23 The parties dispute how certain terms in the insurance policies at issue should be
24 interpreted. Ohio Indemnity argues that the language at issue is clear and unambiguous, and
25 that based on such language, coverage is limited to claims that were both billed by the state

---

[4] Section 187 of the Restatement Second of Conflicts of Law states that a "forum will not refrain from applying the chosen law *merely because this would lead to a different result* than would be obtained under the local law of the state of the otherwise applicable law." Rest. 2d Conf. of Laws, § 187 subd. g (emphasis added).

4

1  unemployment compensation agency and paid by the Trust during the policy year.  The Trust
2  disputes that the policy language is unambiguous and relies on the policies read as a whole, the
3  contracting history, and the parties' prior dealings and representations to argue that coverage
4  should not be limited to claims billed within the policy year.  (Opp. at 8.)

5  Under Ohio law, where, as here, the contract contains an integration clause, the Court
6  may consider extrinsic evidence "[o]nly when the language of a contract is unclear or
7  ambiguous, or when the circumstances surrounding the agreement invest the language of the
8  contract with a special meaning." *See Shifrin v. Forest City Enters., Inc.,* 64 Ohio St. 3d 635,
9  638, 597 N.E.2d 499, 502 (1992) (citations omitted).  A provision is ambiguous only if it is
10 open to several possible meanings or interpretations. *Burris v. Grange Mut. Cos.,* 46 Ohio St.3d
11 84, 89, 545 N.E.2d 83 (1989), *overruled on other grounds by Savoie v. Grange Mut. Ins. Co.*,
12 67 Ohio St. 3d 500 (1993).  When the contract language is clear and unambiguous, courts may
13 not "create a new contract by finding an intent which is not expressed in the clear language used
14 by parties." *DiMarco v. Shay*, 154 Ohio App.3d 141, 147, 796 N.E.2d 572, 576 (2003).  And
15 when the contract language is clear, parol evidence cannot be considered in order to
16 demonstrate an ambiguity. *Id*.  Nor can extrinsic evidence be used to expand coverage beyond
17 the express terms of an insurance policy under the doctrines of waiver or estoppel. *See Lakota*
18 *v. Westfield Ins. Co.*, 132 Ohio App. 3d 138, 144, 724 N.E.2d 815, 818-819 (1998).

19 Here, the polices provide that Ohio Indemnity "will indemnify the participant for
20 covered benefits paid by such participant during the coverage period to the extent that such
21 covered benefits exceed the applicable retained obligation of the participant." (Declaration of
22 Betsey Brewer ("Brewer Decl."), Exs. 1, 2.)  The Trust is the participant.  (*Id*.)  In this
23 paragraph, the term "covered benefits" is in bold denoting that it is a specially defined term.
24 The definitions of specific terms used in the policy follow right below this paragraph.  "Covered
25 benefits" is the second defined term in the policies and it is defined to mean: "valid
26 unemployment benefits, not exceeding the particular state's prevailing maximum claim duration
27 for any one claim, billed to a participate (*sic*) by a State Unemployment Compensation Agency
28 under an Unemployment Act during the coverage period, for which reimbursement payments

5

are made to such agency by a participant. Covered benefits are limited to those benefits paid by agencies identified in Item 3 of the Declarations, net of any credit." (Brewer Decl., Exs. 1, 2.) The clause "billed to a participate (*sic*) by a State Unemployment Compensation Agency under an Unemployment Act during the coverage period" makes clear that covered benefits are limited to those billed by a state unemployment compensation agency during the policy year. Read in conjunction with the first paragraph setting forth the coverage, it is clear that the covered benefits must be paid by the participant, *i.e.* the Trust, during the policy year as well. The Court finds that this language is clear and unambiguous.

In support of its argument that the definition of covered benefits is ambiguous, the Trust omits the "billed to a participate (*sic*) by a State Unemployment Compensation Agency under an Unemployment Act" from the clause at issue. (Opp. at 10 fn. 1.) However, the Trust does not provide any justification for deleting this key portion of the clause. The Court thus finds unconvincing the Trust's argument that the language is ambiguous. Accordingly, the Court cannot not consider the extrinsic evidence proffered by the Trust to alter the meaning of "covered benefits."

To the extent the Trust argues that the policies should be reformed to exclude the requirement that the claims had been billed by the state unemployment compensation agency during the policy year, the Trust failed to make the requisite showing. Under Ohio law, a contract may be reformed only where "it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them." *Wagner v. National Fire Ins. Co.*, 132 Ohio St. 405, 412-13, 8 N.E.2d 144, 148 (1937). Moreover, the Trust must demonstrate the mistake was mutual by clear and convincing evidence. *See id.* "Generally, a contract may not be reformed in the case of a unilateral mistake." *Galehouse Constr. Co., Inc. v. Winkler*, 128 Ohio App. 3d 300, 303, 714 N.E.2d 954, 955 (1998). However, reformation is permissible "where the mistake occurred due to a drafting error by one party and the other party knew of the error and took advantage of it. ... Reformation is appropriate if one party believes that a contract correctly integrates the

6

agreement and the other party is aware that it does not, even though the mistake was not mutual." *Id.* (internal citations omitted).

The Trust has not presented evidence of a mutual mistake or a mistake by the Trust in drafting the policies of which Ohio Indemnity was aware and took advantage. Notably, although the Trust plead and argues that it believed the policies provided coverage for all amounts *it paid* to state agencies during the policy period, the evidence submitted by the parties demonstrates that the Trust's agents believed the policies provided coverage for all amounts the *state agencies paid* during the policy period. (Brewer Decl., ¶¶ 22, 23; Seeds Decl., Ex. E (Brewer Depo at 23:1-24:3); McCutchon Decl., ¶ 4.) Furthermore, the evidence demonstrates that the Trust was aware that the coverage provided under the policy language was inconsistent with how claims had been submitted and paid. (Brewer Decl., ¶ 26 ("Unfortunately the policy didn't state that but we all ignored that."); Seeds Decl., Ex. G (Brewer Depo. at 43:12-44:8).) Therefore, the Trust has not submitted evidence to create a question of fact regarding whether it was mistaken as to what the policy language provided. The Court cannot reform the policies to provide a coverage that is different from the coverage the Trust thought the policies had provided.

The Court therefore holds that the policy is limited to claims that were both billed by the state unemployment compensation agency and paid by the Trust during the policy year. Accordingly, the Court grants Ohio Indemnity's motion for summary judgment on this ground. The Trust's claim under the 2002 policy is thus reduced by $405,939.[5]

### 3. Taxable Payroll of Non-Member Agencies.

Next, Ohio Indemnity argues that the taxable payroll during the policy year for non-member agencies to which the Trust paid claims should have been calculated into the retained obligation, thus reducing the 2003 claim by $527,838. (Rev. Mot. at 13.) For this argument,

---

[5] As discussed above, there is disputed evidence regarding the amount that was billed in 2002 and paid in 2003. Therefore, the Court will not determine the exact amount that Ohio Indemnity may deduct.

7

1  Ohio Indemnity relies on purported testimony by the Trust's executive director.[6] Ohio
2  Indemnity also argues that the language of the policies support its position. It is undisputed that
3  Ohio Indemnity only is obligated to pay covered benefits that exceed the "retained obligation."
4  The 2003 policy defines "retained obligation" to mean "the amount of covered benefits that are
5  paid by a participant during the coverage period before any obligation for payment by [Ohio
6  Indemnity] under this Agreement arises." (Brewer Decl., Ex. 2.) The policy further provides
7  that the "retained obligation amount for a participant is ... 2.0% of taxable payroll, subject to a
8  minimum retained obligation of $37,500,000.00." (*Id.*) "Taxable payroll," in turn, is defined as
9  "taxable payroll as reported to the applicable State Unemployment Compensation Agency, or, if
10 unavailable, the applicable state's prevailing unemployment compensation taxable wage base
11 multiplied by the highest full time equivalent (FTE) employment complement generated by a
12 participant during the coverage period." (*Id.*) Based on this language, Ohio Indemnity argues
13 that the "retained obligation" is calculated from the Trust's members' combined payroll, and
14 that, to the extent the Trust seeks coverage for payments it made to non-members, the
15 calculation of the retained obligation should be based on such non-members' taxable payroll.

16  However, the policy defines the "participant" as the Trust. (*Id.*) It does not address
17 what taxable payroll should be considered in determining the retained obligation. In other
18 words, the policy is silent as to whether the taxable payroll from current and/or former members
19 of the Trust should be considered. The Trust submits evidence demonstrating that it was the
20 parties' practice to provide coverage for claims of withdrawing members without requiring the
21 taxable payroll for the entire year of such members be considered in calculating the retained
22 obligation. (Brewer Decl., ¶¶ 20-21, Ex. 13; Smith Jones Decl., ¶ 13.) Accordingly, the Court
23 cannot construe the policies as a matter of law in the manner urged by Ohio Indemnity on its
24 motion for summary judgment.

25  **4.     Purported Failure to Challenge Invalid Claims.**

---

[6] Ohio Indemnity cites to the deposition testimony of Holly Smith Jones in which she purportedly agreed with Ohio Indemnity's position, but failed to submit to the Court the portion of her deposition transcript with such purported testimony.

8

Next, Ohio Indemnity argues that the policies required the Trust, as a condition precedent to coverage, to implement cost control procedures such as disputing invalid claims. Ohio Indemnity contends that the Trust instructed its claims monitor not to protest claims against the employers' wishes and thus failed to dispute all invalid claims. However, the policy does not specifically provide that the claims monitor must dispute all invalid claims or even that all claims employers do not wish to contest are invalid claims. The polices merely provide that the claims monitor shall "take all appropriate action to contest claims considered to be unjustified." (Brewer Decl., Exs. 1, 2.) The policies leave the determination of what claims are or are not unjustified to the discretion of the claims monitor. The Trust has proffered evidence showing that the claims administrator considered all of the claims that were submitted to be justified. (Declaration of Phillip Daniel Russo, ¶¶ 4-25, Exs. 41, 42.) Such evidence creates genuine issue of material fact as to whether the condition precedent that the claims monitor take all appropriate action to contest claims considered to be unjustified was not satisfied.

Ohio Indemnity also argues the policies only cover "valid unemployment benefits" and that any claim amenable to challenge is not a valid. However, the policies do not define the term "valid." The claims for which the Trust seeks coverage are ones that the state unemployment compensation agencies paid, and thus, presumably, found valid. Therefore, the Court cannot find, as a matter of law, that all claims that the claims administrator did not dispute based upon the employers' wishes, were invalid. Accordingly, the Court denies Ohio Indemnity's motion for summary judgment on this ground. For the same reasons, the Court denies Ohio Indemnity motion for summary judgment on the ground that the Trust breached the covenant of good faith and fair dealing by failing to dispute claims that employers did not want to challenge.

**5.    Set-Offs.**

Ohio Indemnity argues that it is entitled to a set off of $249.315 in earned premium during 2004 and of $564,922 it paid for state mandated bonds on the Trust's behalf. The Trust counters that Ohio Indemnity waived these issues by failing to plead the set-offs as an affirmative defense. "Under the Federal Rules of Civil Procedure, a party, with limited

9

exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); *see also Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (affirmative defenses that are not timely plead are subject to waiver). While, "[i]n the absence of a showing of prejudice, ... an affirmative defense may be raised for the first time at summary judgment," there is evidence indicating prejudice here. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). Ohio Indemnity raised these issues for the first time in a letter dated September 6, 2007, less than a month before the close of non-expert discovery. (Smith Jones Decl., ¶ 43.) Therefore, the Court cannot find as a matter of law that Ohio Indemnity did not waive these set offs.

### 6. Bad Faith Claim and Punitive Damages.

Finally, Ohio Indemnity moves for summary judgment on the claim for breach of the implied covenant of good faith and fair dealing and request for punitive damages. As discussed above, the Court found that coverage under the policies at issue was limited to claims that were both billed by the state unemployment compensation agency and paid by the Trust during the policy year. The Trust cannot maintain a bad faith claim for failure to pay benefits beyond the scope of this coverage. *Daniels v. Citizens Ins. Co. of Ohio*, 2005 WL 3097878, *2 (Ohio App. 12 Dist. Nov. 21, 2005). Accordingly, the Court grants Ohio Indemnity's motion for summary judgment as to this issue. However, the Court finds that there are genuine issues of material fact which preclude summary judgment on the remainder of the Trust's bad faith claim and request for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Ohio Indemnity's motion for summary judgment as follows:

(1) The Court GRANTS Ohio Indemnity's motion as to the deduction for claims that were both billed and paid within the policy year. Pursuant to this deduction, the Trust's claim under the 2002 policy is reduced by $405,939. The Court will not determine the exact amount that may be deducted from the 2003 policy.

10

(2) The Court GRANTS Ohio Indemnity's motion as to the Trust's claim for breach of the implied covenant and fair dealing to the extent it is premised on the deduction for claims that were both billed and paid within the policy year.

(3) The Court DENIES Ohio Indemnity's motion as to the taxable payroll deduction, the alleged failure to challenge invalid claims, and Ohio Indemnity's alleged entitlement to set offs.

(4) The Court DENIES Ohio Indemnity's motion as to the Trust's request for punitive damages and its claim for breach of the implied covenant and fair dealing to the extent it is not premised on the deduction for claims that were both billed and paid within the policy year.

**IT IS SO ORDERED.**

Dated: March 17, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE